IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HOWARD L. MOON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-261-GMS |
| v. | ) | C.A. No. 07-358-GMS |
| | ) | |
| THE DELAWARE RIVER AND BAY | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
E-mail: wbowser@ycst.com; amartinelli@ycst.com
*Attorneys for Defendant*

Date:  May 8, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ..................................................... ii

NATURE AND STAGE OF PROCEEDINGS ................................. 1

SUMMARY OF ARGUMENT .............................................. 1

STATEMENT OF FACTS ................................................. 2

ARGUMENT ........................................................... 5

I.    SUMMARY JUDGMENT SHOULD BE GRANTED ON
      MOON'S DISCRIMINATION CLAIMS ............................... 5

      A.    Standard Of Review ..................................... 5

      B.    Moon Cannot Establish That He Was Subjected To
            Discrimination Based On His Race ........................ 6

II.   SUMMARY JUDGMENT SHOULD BE GRANTED ON
      MOON'S RETALIATION CLAIMS ................................. 17

      A.    Retaliation Claims Alleged In Moon's Second Complaint
            Should Be Dismissed Because The Complaint Was Not
            Timely Served Under Fed. R. Civ. P. 4(m) ................ 17

      B.    Moon Cannot Establish A *Prima Facie* Case Of Retaliation ........ 17

      C.    Moon Did Not Suffer A Materially Adverse Employment
            Action ................................................ 18

      D.    DRBA Has Articulated A Non-Discriminatory Reason For
            The Denied Promotions and Moon Has Not Established
            that DRBA's Explanation For Its Decision Is A Pretext For
            Unlawful Retaliation. ................................. 19

CONCLUSION ......................................................... 20

## TABLE OF CITATIONS

**Federal Cases**

Allen v. Best Foods Baking Co.,
   No. 02-CV-3663
   2003 U.S. Dist. LEXIS 24675 (E.D. Pa. Oct. 22, 2003) ........................................................... 9

AMTRAK v. Morgan,
   536 U.S. 101 (2002) ................................................................................................................. 8

Andrews v. Abbott Laboratories,
   No. 00-901
   2002 U.S. Dist. LEXIS 6832 (D. Del. Apr. 18, 2002)............................................................. 13

Billett v. Cigna Corp.,
   940 F.2d 812 (3d Cir. 1991)..................................................................................................... 20

Brennan v. Norton,
   350 F.3d 399 (3d Cir. 2003)..................................................................................................... 20

Carmichael v. Pennsauken Twp. Bd. of Ed.,
   462 F. Supp. 2d 601 (D.N.J. 2007).......................................................................................... 20

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ................................................................................................................... 5

Connie v. Southeastern Penna. Transp. Auth.,
   No. 03-3858
   2005 U.S. Dist. LEXIS 10453 (E.D. Pa. March 17, 2005)...................................................... 16

DeHart v. Baker Hughes Oilfield Operations,
   214 Fed. Appx. 437 (5th Cir. 2007) ......................................................................................... 19

Ferguson v. E.I. DuPont de Nemours & Co.,
   560 F. Supp. 1172 (D. Del. 1983) ............................................................................................ 17

Fuentes v. Perskie,
   32 F. 3d 759 (3d Cir. 1994)...................................................................................................... 16

Hanani v. State of New Jersey Dept. of Environmental Protection et al.,
   205 Fed. Appx. 71 (3d Cir. 2006) .............................................................................................. 8

Hazen v. Modern Food Servs., Inc.,
   113 Fed. Appx. 442 (3d Cir. 2004) ............................................................................................ 6

Horowitz v. Fed. Kemper Life Assurance Co.,
   57 F.3d 300 (3d Cir. 1995).......................................................................................................... 5

Jones v. Sch. Dist. of Philadelphia,
   198 F.3d 403 (3d Cir. 1999)................................................................. 9

Kautz v. Met-Pro Corp.,
   412 F.3d 463 (3d Cir. 2005)............................................................... 16

Keller v. Orix Credit Alliance, Inc.,
   130 F.3d 1101 (3d Cir. 1997).............................................................. 16

Kovoor v. Sch. Dist. of Philadelphia,
   211 F. Supp. 2d 614 (E.D. Pa. 2002)..................................................... 9

Ledbetter v. Goodyear Tire & Rubber Co.,
   127 S. Ct. 2162 (2007)..................................................................... 8, 9

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) .......................................................................... 5

McDonnell Douglas Corp. v. Green,
   411 U.S. 792 (1972) ...................................................................... 6, 17

Morrison v. Carpenter Technology Corp.,
   193 Fed. Appx. 148 (3d Cir. 2006) ...................................................... 19

Ostapowicz v. Johnson,
   541 F.2d 394 (3d Cir. 1976)................................................................ 7

Pinckney v. County of Northampton,
   512 F. Supp. 989 (E.D. Pa. 1981)........................................................ 15

Richards v. City of Wilmington.,
   No. 03-106
   2004 U.S. Dist. LEXIS 4987 (D. Del. Mar. 24, 2004) ..................... 5, 6, 17

Rush v. Scott Specialty Gases, Inc.,
   113 F. 3d 476 (3d Cir. 1997).............................................................. 7, 8

Simpson v. Kay Jewelers,
   142 F.3d 639 (3d Cir. 1998)............................................................... 16

St. Mary's Honor Center v. Hicks,
   509 U.S. 502 (1993) ...................................................................... 6, 15

Taylor v. Proctor & Gamble Dover Wipes Co.,
   184 F. Supp. 2d 402 (D. Del. 2002) ...................................................... 5

Texas Dept. of Community Affairs v. Burdine,
   450 U.S. 248 (1981) .......................................................................... 6

Williams v. Rohm & Haas Co.,
   90 Fed. Appx. 627 (3d Cir. 2004) ........................................................ 8

Woodson v. Scott Paper,
   109 F.3d 913 (3d Cir. 1997)............................................................... 17

**State Cases**

17 Del. C. §1701 ......................................................................... 2

42 U.S.C.A. §2000e-5 ................................................................. 7

**Federal Statutes**

Fed R. Civ. P. 56(c) ..................................................................... 5

Fed. R. Civ. P. 4(m).................................................................. 5, 17

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Howard L. Moon ("Moon") filed this lawsuit against his employer, the Delaware River & Bay Authority ("DRBA" or the "Authority") on May 2, 2005, claiming that the DRBA had unlawfully discriminated against him on the basis of race and that he was retaliated against after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

On August 3, 2005, Defendant filed a Motion for Judgment on the Pleadings.  On February 24, 2006, the Court (Judge Farnan) granted Defendant's Motion in part, dismissing Moon's hostile work environment claims, (D.I. 19 and 20), and denied Moon's Motion for Reargument.  (D.I. 26).

On June 12, 2007, Moon's counsel entered their withdrawal from the case, and James Hall of Phillips, Goldman & Spence entered his appearance.  (D.I. 68).  The case was also reassigned from Judge Farnan to Judge Sleet and a new scheduling order was entered.  (D.I. 71).

On May 8, 2008, DRBA filed a motion for summary judgment on the remaining claims. This is DRBA's brief in support of its motion for summary judgment.

## SUMMARY OF ARGUMENT

Moon alleges that DRBA subjected him to discrimination based on his race and retaliation.  Pursuant to the Court's February 24, 2006 Order, Moon's case is limited to failure to promote and retaliation.  (D.I. 20).  Specifically, Moon claims that he was denied the following promotions on the basis of his race:  (1) Chief Operations Officer ("COO") (awarded in 2002); (2) Director of Ferry Operations (awarded in 2003 and 2006); (3) Superintendent of Toll Operations (awarded in 2005); and (4) Assistant Director of Ferry Operations (awarded in 2004). As detailed below, Moon's failure to promote claims must fail for the following reasons:

- Moon's claim regarding the COO position must be dismissed because it was not properly exhausted by filing at the administrative level.  Even if, as the Court earlier ruled, a reasonable EEOC investigation would have included the COO promotion, Moon's 2004 charge of discrimination was untimely as to a discrete act of discrimination in 2002.

- Moon's claims for failure to promote must fail because Moon failed to meet objective job qualifications for the COO, Director of Ferry Operations, and Assistant Director of Ferry Operations positions – notably, marine operations experience for the ferry positions.

- Moon's claims for failure to promote must fail because DRBA has identified legitimate, non-discriminatory reasons for its decision not to promote Moon: its well-supported belief that other candidates were better qualified for the positions.

Furthermore, Moon's retaliation claim also lacks merit. Other than his denied promotions, the alleged acts of retaliation are not materially adverse such that they would deter a reasonable plaintiff from pursuing his claims. Moreover, Moon is anything but deterred. Since the alleged acts of retaliation, Moon has filed two internal grievances regarding his pay, spoken three times before the Board of Commissioners regarding alleged racial discrimination, and has attempted to organize a class action lawsuit.

## STATEMENT OF FACTS

### General Background Of DRBA

The DRBA was formed in 1962, pursuant to a constitutional compact between Delaware and New Jersey to advance their economic development and to improve the flow of traffic between the two states. 17 Del. C. § 1701. The DRBA operates the Delaware Memorial Bridge – the world's largest twin span suspension bridge, the Cape May-Lewes Ferry System, and the Three Forts Ferry Crossing on the Delaware River, as well as the Airport Facility at New Castle, Delaware. See "About the DRBA," available at http://www.drba.net/about/compact.html.

### Moon's Employment History

DRBA hired Moon as a toll collector in 1992. In 1996, he was promoted to the position of Ferry Reservations Manager. (A113). As Ferry Reservations Manager, he is responsible for supervising the reservations operations and call-center for the Cape May-Lewes Ferry. (A1-2). He supervises two permanent full-time employees, and additional part-time employees hired on a seasonal basis. (A145). He reports to Heath Gehrke ("Gehrke"), the current Director of Ferry

Operations, and former Assistant Director of Ferry Operations.  (A145).  Gehrke, in turn, reports to James W. Walls ("Walls"), the Chief Operations Officer.  (A145).

Moon received annual pay increases until 2004, when his position was reclassified as a result of the addition of internet sales for ferry reservations.  As a result of the reclassification, his paygrade moved from K ($41,013 - $51, 267) to J ($48,816 - $61,020).  (A29).  Moon remains in that position and paygrade currently, earning $66,671.00 per year.  (A114).  During the course of his employment, he has pursued advanced education and training through the DRBA's Educational Assistance Program.  He received his undergraduate degree in business administration from University of Delaware in 2002, and a Masters in Business Administration from Villanova in 2004.  Moon received at least $27,000 in education funding from the DRBA for his University of Delaware degree alone.  (A116).

**James Johnson Ushers In New Administration At The DRBA**

In April of 2002, James Johnson ("Johnson") assumed the position of Executive Director at the DRBA.  In 2003, Johnson created the position of EEO/Recruitment Coordinator, and hired Consuella Petty-Judkins ("Petty-Judkins") to fill that position.  Petty-Judkins' responsibilities include overseeing all recruitment programs, investigating alleged employment discrimination complaints, and developing educational programs related to diversity and equal opportunity.  (A139; A148-49).  Her primary responsibilities include attracting a diverse and qualified applicant pool from which to interview.  (A139; A148-49).

**DRBA Achievements In Diversity**

DRBA is not a federal contractor and therefore is not required by law to prepare a written Affirmative Action Plan.  (A149).  However, because it views its oversight role seriously, it developed an EEO Action Plan completed in 2005.  (A149).  The analysis revealed no statistically significant evidence of discrimination against applicants or employees based on race or sex.  (A149).  An Executive Summary of the EEOC Action Plan was placed on the DRBA

website, and DRBA is currently in the process of updating this plan based on more recent statistics.  (A62-63; A149).

Additionally, with efforts led by Petty-Judkins, the DRBA has conducted special recruitment activities at regional schools and fairs, engaging in hundreds of contacts in an effort to create a qualified and diverse candidate pool for potential job openings at the Authority. (A140; A148-49).  DRBA has conducted recruitment in at least ten regional colleges and universities, and participates in dozens of diversity job fairs.  (A140; A148-49).

DRBA's efforts have paid off.  Since 2002, DRBA has hired 132 permanent, full-time employees, and 28% of those have been African-American, Asian, or Hispanic.  (A149).  As a result of the minority recruitment efforts, the overall minority level of employment has increased from 8% to 11% during that time period.  (A149).

**Moon Applies For And Does Not Receive Several Internal Promotions**

During his employment at the DRBA, Moon applied for, and was denied, several positions at the DRBA, which form the basis of his discrimination claims and alleged damages: (1) Chief Operations Officer; (2) Director of Ferry Operations; (3) Superintendent of Toll Operations, and (4) Assistant Director of Ferry Operations.

**Moon Files Two Lawsuits And Court Dismisses Two Counts**

On May 3, 2005, Moon filed this lawsuit against the DRBA.  In his 66-paragraph Complaint, Moon made allegations dating back to 1992 and exceeding the scope of his EEOC charges.  On February 24, 2006, Judge Farnan, ruling on Defendant's Motion for Judgment on the Pleadings, dismissed Moon's claims of hostile work environment and breach of the implied covenant of good faith and fair dealing, (D.I. 19 and 20), leaving only Moon's failure to promote and retaliation allegations.

**Moon Files Second Lawsuit But Fails To Serve Within 120 Days**

On June 6, 2007, Moon filed a second complaint which largely restated the allegations in the first complaint, but also included allegations of retaliation for events occurring in 2005 and 2006. (C.A. No. 07-358; D.I. 1). This complaint was not served until December 4, 2007, nearly six months after the complaint was filed, and well outside of the 120-day window provided by Fed. R. Civ. P. 4(m). Defendant's Motion to Dismiss For Insufficiency of Service of Process is still pending before the Court. (C.A. No. 07-358; D.I. 6, 7, 9, 11).

ARGUMENT

I.     **SUMMARY JUDGMENT SHOULD BE GRANTED ON MOON'S DISCRIMINATION CLAIMS**

    A.     **Standard Of Review**

Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." See Fed R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material," and disputes "genuine," only if "'evidence exists from which a rational person could conclude that the position of the person with the burden of proof is correct.'" Richards v. City of Wilmington., No. 03-106, 2004 U.S. Dist. LEXIS 4987, at *8 (D. Del. Mar. 24, 2004) (quoting Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)).

To defeat a summary judgment motion, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'. . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). See also Taylor v. Proctor & Gamble Dover Wipes Co., 184 F. Supp. 2d 402, 408 (D. Del. 2002) ("mere

scintilla of evidence in support of non-moving party is insufficient"); Richards, 2004 U.S. Dist. LEXIS 4987, at *11-12. ("There must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue."). Measured against this standard, all of Moon's claims fail as a matter of law.

      **B.**    **Moon Cannot Establish That He Was Subjected To Discrimination Based On His Race**

      Moon can prove his claim only by circumstantial evidence, and therefore, the Court must evaluate his claim in accordance with the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972), and its progeny. Under that familiar standard:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

      The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993). The plaintiff's claim must fail where, as here, the plaintiff cannot prove that his membership in a protected class actually motivated the employer's decision. See Hazen Paper v. Biggins, 507 U.S. 604, 610 (1993).

      Moon's discrimination claim is based on his failure to be awarded several internal positions for which he applied: (1) Chief Operations Officer; (2) Director of Ferry Operations; (3) Superintendent of Toll Operations; and (4) Assistant Director of Ferry Operations. Moon's claims of racial discrimination are limited to these four failure to promote claims, based on the

Court's February 24, 2006 order.  (D.I. 20).  Moon cannot establish a *prima facie* case of
discrimination based on any of his failure to promote claims.

> **1.    Moon's Failure To Promote Claim For The COO Position Should Be
> Dismissed Because He Failed To Exhaust His Administrative Remedy**

Moon alleges in his Complaint that one of DRBA's acts of discrimination occurred when
he was passed over for the position of Chief Operations Officer (COO) in November of 2002.
(D.I. 1 ¶ 18).  A plaintiff may bring an employment discrimination action only after filing a
timely charge with the appropriate administrative agency – in this case, the Equal Employment
Opportunity Commission (EEOC) or the Delaware Department of Labor (DDOL).  42 U.S.C.A.
§2000e-5.  The purpose of this requirement is to give the administrative agency the opportunity
to investigate, mediate, and take remedial action with respect to a plaintiff's charge of
discrimination.  See Ostapowicz v. Johnson, 541 F.2d 394, 398 (3d Cir. 1976).  This purpose
would be defeated if a plaintiff were allowed to litigate a claim not previously submitted to and
investigated by the appropriate administrative agency.  See id.

Here, Moon did not include his denial of the COO position in any of his charges of
discrimination.  To the extent Moon is now attempting to assert such claims against DRBA in
this Court, those claims fail because they were never submitted to nor investigated by the EEOC
or DDOL.  See Rush v. Scott Specialty Gases, Inc., 113 F. 3d 476, 483-84 (3d Cir. 1997).

Even if one were to assume, as this Court did, that the EEOC's investigation of Moon's
April 2004 charge of discrimination would reasonably include the COO promotion, the charge
must still be timely as to each discrete event.[1]  On November 14, 2002, Moon was notified that
he was not selected for the position.  (A16).  The selected candidate, James Walls, accepted the

---

[1] In the Memorandum Opinion dated Feb. 24, 2006, (D.I. 19) the Court denied Defendant's
Motion for Judgment on the Pleadings with respect to the COO position, holding that there was a
"close nexus" between the failure to promote to COO position and other failure to promote
allegations in his initial EEOC charge (dated April 6, 2004).  However, the Court did not address
whether the charge (assuming the scope of the April 2004 charge included the COO claim)
would be timely as to the COO position.

position in February of 2003 and began work in March of 2003. (A18). Using any conceivable date as a starting point, Moon's April 4, 2004 Charge was not filed within the 300-day statutory period.

It is well-settled that failure to promote claims are considered discrete claims and cannot be a part of any "continuing violation," such that a plaintiff would have more than 300 days to file a charge on such claim. See, e.g., Rush v. Scott Specialty Glasses, Inc., 113 F.3d 476, 484 (3d Cir. 1997). See also, Williams v. Rohm & Haas Co., 90 Fed. Appx. 627, 628 (3d Cir. 2004) (citing AMTRAK v. Morgan, 536 U.S. 101, 114 (2002) for the principle that a failure-to-promote claim is a discrete act of discrimination not susceptible of analysis under a continuing violation theory, and each such discrete discriminatory act starts a new clock for filing charges alleging that act.); Hanani v. State of New Jersey Dept. of Environmental Protection et al., 205 Fed. Appx. 71, 78 (3d Cir. 2006) (upholding dismissal of failure to promote claim based on failure to file timely claim, noting that failure to promote was a discrete act and "cannot be resurrected by being aggregated and labeled continuing violations").

Since the Court's last ruling on this issue in 2006, the U.S. Supreme Court has had the opportunity to clarify further the concept of discrete acts of discrimination and its effect on filing deadlines, in Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162 (2007). In Ledbetter, the U.S. Supreme Court held that the plaintiff's allegations of discriminatory pay were untimely as to paychecks that she received outside of the 300-day statutory period, because she had alleged a series of discrete discriminatory acts. Id. at 2175. The Court cited to Morgan, for the principle that:

> the statutory term "employment practice" generally refers to "a discrete act of single occurrence that takes place at a particular point in time. Morgan, 536 U.S. at 110-111. We pointed to "termination, failure to promote, denial of transfer, [and] refusal to hire" as examples of such "discrete" acts, and we held that a Title VII plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."

Ledbetter, 127 S. Ct. at 2169 (emphasis added).

The Court in <u>Ledbetter</u> further held that "<u>Morgan</u> is perfectly clear that when an employee alleges 'serial violation,' *i.e.*, a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation." <u>Id.</u> at 2175. Therefore, Moon's April 2004 charge regarding his denied promotion to several positions cannot be deemed to cover the COO position, which occurred outside of the appropriate (300-day) timeframe. <u>Ledbetter</u> makes clear that the fact that Moon filed charges regarding other promotions cannot act to resuscitate his time-barred claim regarding the COO position. <u>See</u> <u>also</u> <u>Kovoor v. Sch.</u> <u>Dist. of Philadelphia</u>, 211 F. Supp. 2d 614, 622 (E.D. Pa. 2002) (holding that where plaintiff was denied promotions annually over the course of several years, each rejection triggered a duty to file a charge under Title VII); <u>Allen v. Best Foods Baking Co.</u>, No. 02-CV-3663, 2003 U.S. Dist. LEXIS 24675 at *14-16 (E.D. Pa. Oct. 22, 2003) (same).

### 2. Moon Cannot Establish A *Prima Facie* Case Of Discrimination For Failure To Promote

To establish a *prima facie* case for failure to promote, Moon must show: (1) he belongs to a protected class; (2) that he sought and was qualified for the promotion; (3) that despite his qualifications he was rejected; and (4) that the failure to promote occurred under circumstances that give rise to an inference of unlawful discrimination. <u>See</u> <u>Jones v. Sch. Dist. of Philadelphia</u>, 198 F.3d 403, 410-11 (3d Cir. 1999). DRBA concedes for purposes of this motion that Moon is a member of a protected class, and that he was not promoted for the positions at issue. However, Moon cannot satisfy the remaining elements of a *prima facie* case: that he was qualified for the promotion, or that his rejection occurred under circumstances giving rise to unlawful discrimination. The selection process for each contested promotion is addressed below.

#### a. Chief Operations Officer

DRBA posted an opening for a Chief Operations Officer (COO) in October of 2002. (A5-8). The position was posted at a paygrade of E (salary range $111,000 - $154,000). (A5). This position was at the time one of five (now six) executive-level positions at the Authority.

(A148).  The experience sought on the job posting included:  "Extensive management experience at the senior level in a dynamic and multi-faceted organization, department or division with a budget over $50 million and 450+ employees is desired.  Experience with facility management, labor issues, capital and operating budgets and analyses is also helpful."  (A6).

DRBA hired an outside search firm, The Touchtone Partnership, Ltd. ("Touchtone"), to conduct the search for the COO position.  (A127-28).  Johnson, nor any other DRBA employee had any involvement with the initial screening process; this was left to the sole discretion of Touchtone.  (A130).  For each applicant, a Touchtone employee completed a Resume Evaluation Checklist, which included objective criteria used to identify candidates who best fit the needs of the Authority.  (A16; A129-30).  The criteria were then added to create a total "score" for each candidate.  (A129-30).  This score was used to determine who would be granted an interview for the position.  (A132).  Moon applied for the position, submitting a cover letter and resume for consideration on October 7, 2002.  (A13-14).  This information was reviewed by Touchtone employees Skip Lange and Joey Smith and scored on a checklist.  (A15; A130; A131).

Moon received a 6 out of 11 total points on the resume checklist.  It was noted on the checklist that he did not have experience with organized labor (a "required" criteria), nor budget or business management experience at a senior level.  (A15).  Moon acknowledges that he had not managed a budget of over $50 million, nor managed more than 450 employees – both qualifications of which were included in the job listing.  (A118-19).  For many other pertinent qualifications, Moon testified that his experience consisted of attending meetings with other managers who had the requisite responsibilities and that he "stud[ied] or read[]" about it.  (A120-22).  The following testimony regarding his relevant job "experience" typifies his responses regarding his pertinent experience and qualifications:

> Q.    Did you have the experience interpreting policy [regarding labor issues]?
> A:    Well, as I said, as being part of a union and spending hours studying and
>        reading, yes.
> Q:    Did you have experience with facility management?
>                                        ***

Q:      So your experience consists of having meetings with facility management
        people and others on a regular basis?

A:       In being a director, yes, every Monday morning we would meet with the
        executive director to where facilities and engineering would come up and
        be part of the topic.  To that extent, yes, I have experience.

Q:      Did you have knowledge of relevant economic, financial, political and
        government trends in which the Authority operates?

                                    ***

A:      I've been with the Authority for, as I said, almost fourteen years.  I've sat
        through commission meetings for years.  I've sat through management
        meetings for years.  I have done studies and I have the education and I
        have studied the areas so, yes, I do.

(A121-22).

        Moon's belief that the mere fact he's been employed at the Authority a number of years,
and attended meetings alongside employees with relevant experience, makes him qualified for
one of the top five positions at the Authority do not make it so.  Moon, along with a number of
other internal candidates (black and white, male and female), did not receive a score high enough
to be interviewed.  (A17).  On November 14, 2002, Moon was mailed a letter which informed
him he was not selected for the position.  (A16).  After applicants were short-listed by
Touchtone, Johnson was provided a list of the candidates that Touchtone recommended should
be moved forward in the process.  (A133-34).  At some later point, Touchtone provided Johnson
with a list of the internal candidates who were not moved forward, along with their supporting
application materials.  (A133-34).

        As a result of the interviews and the input of the Board of Commissioners, Johnson
eventually recommended that Walls be offered the position.  (A135).  At the time of his
application, Walls was a Senior Director at Amtrak, where he directly supervised 500 employee
and managed a business with annual revenue of more than $600 million.  (A9-12).  He also held
a Masters in Business Administration from West Chester University.  (A9-12).  Walls accepted
the position.  (A18).

### b.    Director Of Ferry Operations

On October 7, 2003, the Authority posted an opening for the Director of Ferry Operations.  (A19-21).  The position was listed at a paygrade F (salary of $82,492 - $103,116).  (A19).  Notably, the Authority sought a Director who had maritime operations experience, including related maritime licenses.  "Required knowledge" as listed on the posting included:

- Ferry and maritime business procedures and practices
- Management principles and practices of ferry and maritime operations, safety, and maintenance
- State and federal laws, regulation, and certification requirements applying to ferry and maritime operations, maintenance, environment, safety, and security
- Operation and maintenance of ferry vessels, facilities, and equipment.

(A20).

The posting further stated that a "USCG Chief Engineers or Masters license for vessels of the size used in CMLF operations and valid U.S. Merchant Mariners Document was preferred."  (A20).

Moon applied for the Director of Ferry Operations position on November 21, 2003, submitting his resume for the position.  (A26-28).  Petty-Judkins performed an initial review of the resumes and made recommendations to Walls who made the final decision as to who would receive an interview.

Moon's experience with the ferry is related only to the operation of the call center; his resume submitted for the Director of Ferry Operations did not reflect anything different.  (A13-14).  His operational marine experience, as he could best spin it in his deposition testimony, consisted of attending meetings with operations personnel, being copied on memos regarding operational issues such as the hurricane policy, and reading the Coast Guard regulations in his spare time.  (A123-25).  Understandably, Petty-Judkins and Walls were in complete agreement that he was not qualified for the position based on his lack of marine operations experience.  (A141; A144; A146).

Harold Nilsen ("Nilsen"), the candidate who was selected for the position, had considerable operational marine experience. Nilsen had served as a Marine Manager for a Fortune 500 company. (A22-25). In that position, he was directly responsible for the Contract Administration, Management and operation of vessels. (A22-25). He also oversaw port engineering and operational staff. (A22-25). He held a Masters U.S. Coast Guard license in Steam and Motor Vessels, Unlimited Tonnage—thereby meeting the DRBA's certification requirements. (A22-25). Moon's experience in managing the ferry reservations call center simply does not equate to marine operations experience, such as that of Nilson.

Therefore, Moon cannot make a *prima facie* case of discrimination with respect to this promotion because he was not qualified. See, e.g., <u>Andrews v. Abbott Laboratories</u>, No. 00-901, 2002 U.S. Dist. LEXIS 6832 at *28-29 (D. Del. Apr. 18, 2002) (granting summary judgment where plaintiff failed to offer evidence that he qualified for the promotion by holding a certain position, a position that all other persons who were promoted had held).

In July of 2005, Nilsen left the Authority, leaving open for the Director of Ferry Operations position once again. Again, the Authority again posted for the Director of Ferry Operations Position, and Moon applied. (A106-08; A109-112). The second posting requested similar qualifications as the first, including required knowledge of marine operations, and a USCG Chief Engineers or Masters License. (A107). Following initial review by Petty-Judkins, and concurrence by Walls, Moon was not granted an interview for the position due primarily to his lack of maritime operations experience. (A141; A144; A146). Each candidate who was interviewed for this position had maritime operations experience. (A146). Ultimately, Gehrke, who was at the time the Assistant Director of Ferry Operations for the DRBA, was awarded the position. (A137).

### c.      Superintendent Of Toll Operations

In 2004, an opening was posted for the position of Superintendent of Toll Operations. (A30-31). Moon was interviewed for the position. (A32). A four-person panel, including

Walls, Petty-Judkins, Gerry DiNicola-Owen's (the Chief Information Officer at DRBA), and P.J. Wilkins (who was from outside the DRBA) interviewed the top four candidates. The panel interviewed Moon, one other internal candidate, and two external candidates. Each candidate was scored on a scale of 0 to 10 based on their interview. (A32; A146). None of the candidates received a total interview score higher than 21 out of a possible 40 points. (A32). Moon scored a total of 12 points, the lowest of the four candidates. (A33-52).

Following the interviews, Walls and the other panel members agreed that none of the interviewed applicants should be hired for the position, and that they would need to re-advertise the position. (A146). In 2005, the Authority re-posted the vacancy for this position. (A64-66). Again, Moon applied for the position. (A73-76). The DRBA underwent the same screening and interview process. The interview panel for the 2005 posting was comprised of Walls, DiNicola-Owens, and Trudy Spence-Parker, Chief Human Resources Officer ("Spence-Parker").[2] (A77-81). For the second round of interviews, Moon received a total score of 17.75 and the selected candidate, Richard Frasetto ("Frasetto"), received a 27.20. (A77-105). Frasetto had directly relevant experience at the Delaware River Port Authority, including almost ten years as a toll plaza supervisor. (A67-72). It was the consensus of the interviewing panel that Moon's answers to the interview questions were inadequate and often non-responsive, demonstrating his lack of knowledge of this line of business. (A146).

### d.     Assistant Director Of Ferry Operations

In July of 2004, Moon applied for the opening of Assistant Director of Ferry Operations. (A53-55; A58-60). The experience requested on the job posting was similar in many respects to that sought for Director of Ferry Operations, including "managerial experience in marine operations," and "knowledge of relevant regulations." (A54). Additionally, the posting stated that "a valid USCG Masters License is preferred." (A54). As discuss in Section 2(b), supra, it is clear that Moon lacked the necessary qualifications for this position.

---

[2] Spence-Parker served as the Chief Human Resources Officer for all time periods relevant to this litigation, until her resignation on March 17, 2008.

After reviewing all applications that were received, Walls and Petty-Judkins together determined who would receive an interview for the position. (A143-44; A145). Based on the same lack of marine operations experience that was a concern for the Director of Ferry Operations position, Moon did not receive an interview. (A143-44; A146). Each candidate who was interviewed for this position had maritime operations experience. (A146). The outside applicant who was offered and accepted the position, Gehrke, had extensive marine operations education and experience. (A56-57; 61). He held a Bachelor of Science in Marine Transportation from the U.S. Merchant Marine Academy, held USCG licenses and had at least eight years' experience as a Marine Operations Manager. (A56-57).

### 3. Even If Moon Could Establish A *Prima Facie* Case, DRBA Has Articulated A Non-Discriminatory Reason For Its Actions

Moon alleges that DRBA denied his promotions because of his race. Moon's allegations are unsubstantiated. As set forth above, Moon's race played no role in DRBA's decisions. Moon was denied the promotions at issue because he did not possess the requisite experience, and because he was not the most qualified candidate. Moon's failure to meet objective job qualifications (*e.g.* possession of a U.S. Coast Guard License or U.S. Merchant Mariners document) and the fact that the selected candidates were more qualified for the positions constitute legitimate non-discriminatory reasons for DRBA's decisions not to promote him. See Pinckney v. County of Northampton, 512 F. Supp. 989 (E.D. Pa. 1981) (employer's conclusion that black employee was not as qualified as the other two candidates had a reasonable basis in fact and comprised a legitimate non-discriminatory reason for the ultimate employment decision).

### 4. Moon Cannot Demonstrate That DRBA's Articulated Reasons Were A Pretext For Discrimination

Once the employer has articulated a non-discriminatory reason for discharging plaintiff, the burden shifts back to plaintiff to show that the employer's articulated reasons were a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). To survive

summary judgment, a plaintiff must provide evidence "from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." See Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F. 3d 759, 764 (3d Cir. 1994)).

Moon's disagreement with the evaluation of his qualifications for the various promotions does not create pretext. Unless the employer uses evaluation criteria wholly lacking any relationship to the job, an employer's method of evaluating employees is "not for the court (or factfinder) to decide." Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005). It does not matter if the employer's decision was "best, or even . . . sound." Id. Nor does it matter if a different or better method of evaluation could have been used. Id. at 471. All that matters is whether discrimination was the real reason for making the decision. Id. at 468 (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc) (citation omitted)). In other words, a plaintiff cannot avoid summary judgment merely by arguing that the employer's decision was wrong. See Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, or competent.") (citing Fuentes, 32 F.3d at 765).

Moreover, subjective decision making which inevitably plays a role in any hiring process does not raise an inference of pretext. In Connie v. Southeastern Penna. Transp. Auth., the plaintiff complained that she did not advance to the final round of interviews for Chief Bus Operations Officer because SEPTA misplaced values on the answers Connie gave to certain interview questions. Connie, No. 03-3858, 2005 U.S. Dist. LEXIS 10453, at *1 (E.D. Pa. March 17, 2005). The plaintiff argued that SEPTA's subjective application of the hiring criteria raised an inference of pretext. The Court rejected this argument, holding that "[c]ourts do not sit as super-personnel departments that reexamine an entity's employment decisions." Id. at *15.

Employers are free to exercise their business judgment to identify the skills most desirable for a candidate in a particular position, even if that decision seems unwise or imprudent.  See id.

In response to DRBA's proffered legitimate, non-discriminatory reasons for its selection of the positions at issue, Moon has nothing other than his own opinion that he was better qualified and that the Authority exercised poor judgment in its selection of the chosen candidate. His contention that the decision had anything to do with race is based on speculation alone.  For this reason, and the others set forth above, summary judgment should be entered in favor of DRBA on Moon's claim of failure to promote.

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED ON MOON'S RETALIATION CLAIMS

### A.    Retaliation Claims Alleged In Moon's Second Complaint Should Be Dismissed Because The Complaint Was Not Timely Served Under Fed. R. Civ. P. 4(m)

Moon's retaliation claims contained in his second Complaint should be dismissed because the Complaint was not timely served under Fed. R. Civ. P. 4(m).  This issue has now been fully briefed and is pending before the Court.  (C.A. No. 07-358; D.I. 7,  9, and 11).

### B.    Moon Cannot Establish A *Prima Facie* Case Of Retaliation

To establish a *prima facie* case of retaliation, Moon must prove:  "(1) that he engaged in a protected activity; (2) that his employer took adverse action against him either after, or contemporaneously with, his protected activity; and (3) that there is a causal connection between the protected activity and the employer's adverse action."  Richards v. City of Wilmington, No. 03-106, 2004 U.S. Dist. LEXIS 4987, at *15 (citing Woodson v. Scott Paper, 109 F.3d 913, 920 (3d Cir. 1997)).  "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Richards, 2004 U.S. Dist. LEXIS 4987, at *15 (quoting Ferguson v. E.I. DuPont de Nemours & Co., 560 F. Supp. 1172, 1200 (D. Del. 1983)).  Once the plaintiff has established a *prima facie* case, the McDonnell-Douglas burden shifting framework is utilized.

The denied promotions did not constitute retaliation because, as alleged above, DRBA had a legitimate non-discriminatory reason for its decision not to promote Moon to any of the positions: he was not qualified. DRBA is entitled to summary judgment because Moon cannot establish the necessary elements of his *prima facie* case. Moreover, Moon has not provided any evidence that the legitimate business reason was merely a pretext for retaliatory motivation.

### C.    Moon Did Not Suffer A Materially Adverse Employment Action

To support a claim of retaliation, a plaintiff must show that a "reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415-16 (2006) (citations omitted). The Supreme Court in Burlington noted that this standard requires *material* adversity, since "it is important to separate significant from trivial harms" and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from petty slights or minor annoyances that often take place at work and that all employees experience." Id. The "adverse actions" in Burlington Northern were changed job duties and a temporary suspension. Id. at 2416-17.

If Moon's second complaint (C.A. No. 07-358; D.I. 1) is permitted to proceed, Moon has alleged a number of trivial actions (in addition to denied promotions) he contends were taken in retaliation for the filing of his discrimination charges and complaint, including:

- Moon was questioned regarding information he had about the new Toll Superintendent ; (¶ 18);

- The EEO manager was present when Moon was informed he did not receive the position of Superintendent of Toll Operations (¶ 19);

- Moon was "excluded" from meetings with a marketing consultant hired to study the decline in ridership of the Cape-May Lewes Ferry (¶ 22);

- A letter placed in his personnel file accusing him of making false allegations (¶ 20); and

- Moon was given and performed additional duties which were suspended (¶ 15).

These allegations simply do not rise to the level of an adverse employment action under the standards set forth in <u>Burlington Northern</u>.  Rather, they constitute "petty slights or minor annoyances" that would not deter a reasonable worker from pursuing a Title VII violation and would not, therefore, be materially adverse under Title VII.  <u>Id.</u> at 28.  Moreover, Moon not alleged any harm caused by the actions, nor could he.  <u>See</u> <u>Morrison v. Carpenter Technology Corp.</u>, 193 Fed. Appx. 148, 154 (3d Cir. 2006) (dismissing plaintiff's retaliation claim where plaintiff "does not identify, much less establish, any harm or injury produced by the corrective performance review").

These alleged acts of retaliation certainly have not deterred Moon, who has at all times continued to pursue his rights vigorously.  Since the alleged retaliatory actions, Moon has taken the following actions to pursue his claims of racial discrimination at the Authority: (1) he filed two internal grievances regarding his pay; (2) he spoke three times during public session of the Board of Commissioners meetings regarding his concerns about racial discrimination and diversity at the DRBA; (3) he involved the Interdenominational Ministers Action Council (IMAC), which presented at the Board of Commissioners meeting on March 18, 2008, and is planning a press conference on the issue of racial discrimination at the DRBA; and (4) he is organizing other DRBA employees to file a class action lawsuit against the DRBA alleging racial discrimination.  (A148-183).  <u>See</u> <u>DeHart v. Baker Hughes Oilfield Operations</u>, 214 Fed. Appx. 437, 442 (5th Cir. 2007) (holding that written warning would not have dissuaded a reasonable worker from pursuing claims when there were colorable grounds for the warning and plaintiff later filed a charge with the EEOC).

**D.    DRBA Has Articulated A Non-Discriminatory Reason For The Denied Promotions and Moon Has Not Established that DRBA's Explanation For Its Decision Is A Pretext For Unlawful Retaliation.**

Against the extensive documentation for its selection of the chosen candidates, who had vastly superior qualifications to Moon's, [see discussion in Section I, B.2, <u>supra</u>], Moon offers nothing more than his own subjective belief that he is more qualified than all of the selected

candidates.  This is not sufficient to support a retaliation claim.  <u>See  Billett v. Cigna Corp.</u>, 940 F.2d 812, 828 (3d Cir. 1991).  Plaintiff must demonstrate more than his "myopic interpretation of events wherein retaliatory motives permeated the Defendants' every move."  <u>See</u> <u>Carmichael v. Pennsauken Twp. Bd. of Ed.</u>, 462 F. Supp. 2d 601 (D.N.J. 2007) (<u>citing</u> <u>Brennan v. Norton</u>, 350 F.3d 399, 420 (3d Cir. 2003)).

## CONCLUSION

For the foregoing reasons, summary judgment should be entered in favor of the Defendant.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adria B. Martinelli*
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
E-mail: wbowser@ycst.com; amartinelli@ycst.com
*Attorneys for Defendant*

Dated:  May 8, 2008